FILED

JUN 2 1 2021

CLERK U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

UNITED STATES,
Plaintiff                    No. 5:14-cr-00123-OLG

        -v-

DAVID LEE ANDERSON,
Defendant

MOTION FOR SENTENCE REDUCTION
PURSUANT TO SECTION 603 OF THE
FIRST STEP ACT OF 2018 AND 18 U.S.C.
SECTION 3582 (c)(1)(A)(i)


Summary of Facts


A grand jury indictment returned February 19, 2014, charged Anderson with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. Section 846 (Count I) and related drug charges. (Doc. no. 33). On April 7, 2015, Anderson entered into a written plea agreement, agreeing to plead guilty to Count I of the indictment, alleging Conspiracy to Possess with Intent to

-1-

Distribute a mixture or substance containing 500 grams or more of a detectable amount of methamphetamine, and to being assessed a two-point enhancement for possessing a dangerous weapon pursuant to U.S.S.G. Section 2D1.1(b)(1). (Doc. no. 144 at 1, 10).

With a sentencing range of 235 to 293 months (Criminal History Category of VI and Offense Level of 37), the Court ultimately sentenced Anderson to a term of 293 months' imprisonment and 10 years' supervised release. This sentence was affirmed by the Fifth Circuit Court of Appeals on July 19, 2016.

Relevant to the instant motion, Anderson's co-defendant Furbush pled guilty to the exact same count to which Anderson pled guilty and was sentenced to only three years of probation. See United States v. Furbush, No. SA-14-CR-123(4)-OLG, Doc. no. 155.

# I. THIS COURT HAS THE AUTHORITY TO RESENTENCE MR. ANDERSON UNDER SECTION 3582(c)(1)(A)(i) FOR THE EXTRAORDINARY AND COMPELLING REASONS PRESENTED HEREIN

## A. When Congress originally enacted Section 3582 in 1984, it intended for district courts to reduce sentences for prisoners on the basis of extraordinary and compelling reasons not limited to only medical, elderly, or family circumstances.

Congress first enacted the modern form of the compassionate release statute contained in 18 U.S.C. Section 3582 as part of the Comprehensive Crime Control Act of 1984 ("Crime Bill"). Section 3582(c) states that a district court can modify a final "term of imprisonment" in four situations, the broadest of which is relevant here. A sentencing court can reduce a sentence

if and whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. Section 3582(c)(1)(A)(i). In 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts lacked authority to modify a prisoner's sentence for extraordinary and compelling reasons.

Although Congress never specifically articulated what constitutes an "extraordinary and compelling reason" for resentencing under Section 3582(c)(1)(A), the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress's initial goals in passing the Crime Bill was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, 53 n. 74 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate

Committee stressed how some individual cases may still warrant a second look at resentencing:

" The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and in some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment." Id. at 55 - 56.

Rather than have a Parole Commission review every federal sentence focused only on an offender's rehabilitation, Congress decided that Section 3582(c) could and would enable courts to decide, in individual cases, if " there is a justification for reducing a

term of imprisonment." Id. at 56. Congress
intended for the situations listed in Section
3582(c) to act as "safety valves for
modification of sentences," (Id. at 121) that
enabled sentence reductions when justified
by various factors that previously would
have been addressed through the (now
abolished) parole system. This particular
safety valve would "assure the availability
of specific review and reduction to a term
of imprisonment for `extraordinary and
compelling reasons' and [would allow courts]
to respond to changes in the guidelines." Id.
Congress noted that this approach would keep
"the sentencing power in the judiciary where
it belongs," rather than with a federal
parole board and that the statute
permitted "later review of sentences in
particularly compelling situations." Id.
    Accordingly, Congress intended to give
federal sentencing courts an equitable power
that would be employed on an individualized
basis to correct fundamentally unfair
sentences such as the one at issue in the
instant case. There is no indication that

Congress limited the safety valve of Section 3582(c)(1)(A) to medical or elderly release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep. No. 98-225, at 55-56.

> B. Through the First Step Act of 2018, Congress changed the compassionate release process based upon the BOP's inadequate use of its authority and mismanagement of the compassionate release program

In passing the First Step Act of 2018, Congress removed the BOP as the gatekeeper to prisoner's compassionate release requests and provided that a court may now resentence a prisoner "upon motion of the defendant," if the defendant submits a request to his warden and there is a "lapse of 30 days from the receipt of such a request by the warden..." 18 U.S.C. Section 3582(c)(1)(A).

The Department of Justice has recognized that, prior to the passage of the First Step

Act, BOP — not the Commission — functionally had the final say on what constituted an "extraordinary and compelling reason" for a sentence reduction, because only the BOP could bring a motion under Section 3582(c)(1)(A). See Dept. of Justice, Letter to U.S. Sentencing Commission Chairman Hinojosa (July 14, 2007) (noting that because Congress gave BOP the power to control which particular cases will be brought to a court's attention, "it would be senseless [for the Commission] to issue policy statements allowing the court to grant such motions on a broader basis than the responsible agency will seek them"). Leaving the BOP Director with ultimate authority for triggering prisoner's sentence reductions was problematic. The Office of the Inspector General found that the BOP failed: to provide adequate guidance to staff on the criteria for compassionate release, to set time limits for reviewing requests, to create formal procedures for informing prisoners about compassionate release, and to generate a system for tracking compassionate release requests. See U.S. Dept. of Justice, Office

of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013) (https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf) ("OIG Report").

The OIG Report indicated that the BOP used its power to submit prisoner motions for compassionate release so "sparingly" that an average of only 24 imprisoned persons were released each year by BOP motion — none for nonmedical reasons. The same Report noted that the BOP poorly managed the compassionate release process and that BOP's mismanagement caused delays so substantial that inmates sometimes died awaiting final BOP decisions. See United States v. Zullo, 976 F.3d 228, 231-32 (2d Cir. 2020). As a result of these problems, the OIG concluded that "BOP does not properly manage the compassionate release program resulting in inmates who may be eligible candidates for release not being considered." OIG Report at Iiv.; see generally Stephen R. Sady & Lynn Deffebach, Second Look Resentencing Under 18 U.S.C. Section

3582 (c) as an Example of Bureau of Prisons
Policies That Result in Over incarceration,
21 FED. Sent. RPTR. 167 (Feb. 2009).

Against this backdrop of BOP mismanagement,
Congress finally amended Section 3582(c)(1)(A)
to "remove the Bureau of Prisons from its
former role as a gatekeeper over compassionate
release petitions." McCoy v. United States,
No. 2:03-cr-197, 2020 WL 2738225, at *4
(E.D. Va. May 26, 2020). Section 603(b) of
the First Step Act further expresses Congress's
intent in passing said section of the First
Step Act in its title — "Increasing the Use
and Transparency of Compassionate Release"
— and provides for defendants to file motions
for sentence modifications on their own
behalf, so long as they first apply to the
BOP and 30 days have lapsed from said
request.

Federal judges now clearly have the
power to order reductions of unusually long
or unfair sentences even in the face of
BOP delay, denial, or other resistance to
a prisoners request for compassionate release.
The legislative history expressed above leading

up to the enactment of the First Step Act establishes that Congress intended the judiciary not only to take on the role that BOP held under the pre First Step Act compassionate release statute as the essential adjudicator of Compassionate Release requests, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable Statute (Section 3582(c)(1)(A)). Such grounds may include non-medical reasons such as an "unusually long sentence" or other grounds based upon "changed circumstances," as Congress indicated. See S. Rep. No. 98-225, at 55-56. Recently the Fifth Circuit came to the same conclusion in United States v. ShKambl, ___ F.3d ___, 2021 U.S. App. LEXIS 10053, 2021 WL 1291609, at *4 (5th Cir. Apr. 7, 2021)("We conclude that neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under Section 3582.").

## II. ANDERSON HAS EXTRAORDINARY AND COMPELLING REASONS WARRANTING A SENTENCE REDUCTION UNDER SECTION 3582(c)(1)(A)(i)

Sentencing courts may now properly assess whether any reason(s) submitted to it are "extraordinary and compelling reasons" warranting relief under Section 3582(c)(1)(A) by making an independent assessment of any reasons which a prisoner submits to the court. United States v. Cantu, No. 1:05-CR-458-1, 2019 U.S. Dist. LEXIS 100923, 2019 WL 2498923, at *4 (S.D. Texas. June 17, 2019); see also United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228 (2d Cir. 2020); United States v. Aruda, No. 20-10245, 2021 U.S. App. LEXIS 10119, 2021 WL 1307884 (9th Cir. 2021); United States v. ShKambi, ___ F.3d ___, 2021 U.S. App. LEXIS 10053, 2021 WL 1291609 (5th Cir. Apr. 7, 2021).

Mr. Anderson submits three extraordinary and compelling reasons warranting a reduced sentence: the sentencing disparity (between he and his codefendants convicted of the exact same crime and between Anderson and defendants with similar records convicted of the same offense); his extensive rehabilitation post conviction; and his vulnerability to COVID-19 while in BOP custody due to his underlying medical conditions.

A. Petitioner's sentencing disparity warrants a reduction in sentence.

Mr. Anderson's sentence imposed by the Court was rather harsh even taking into consideration his criminal record and the severity of the offense to which he plead guilty. In fact, Anderson's sentence was much harsher than any imposed upon his co-defendants. See United States v. Chivers, No. SA-14-CR-123(2)-OLG (W.D. Tex.), Doc. #132; United States v. Perkins, No. SA-14-CR-123(3)-OLG (W.D. Tex.), Doc. #91; and United States v. Furbush, No. SA-14-CR-123(4)-OLG, Doc. #155.

The most apparent sentencing disparity is evidenced by the sentence imposed upon Anderson's co-defendant, Mr. Furbush. Mr. Furbush plead guilty to the exact same conduct and the same count to which Anderson pled guilty (See Doc. #155). However Furbush received three years of probation and Anderson received 293 months of incarceration. Even factoring in the consideration given to the leadership role adjustment, such an incredible gross sentencing disparity seemingly would render a sentence unfair and perhaps in contravention of the mandates of 18 U.S.C. Section 3553 (a)(6) ("the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

In Senate Report No. 225, 98th Cong., 1st Sess. 37-150, in a section entitled "Assuring Fairness in Sentencing," the Committee explained that the primary goal of sentencing reform was "the elimination of unwarranted sentencing disparity," and further noted that it did not intend the Guidelines to

"be imposed in a mechanistic fashion." Id. at 52. See also Booker, 543 U.S. at 250 (noting that "Congress's basic statutory goal" was to create "a system that diminishes sentencing disparity").

Here, it should be noted that the national average sentence for murder in fiscal year 2019 was approximately 21 years incarceration. (Statistical Information Packet Fiscal Year 2019 Seventh Circuit, U.S. Sentencing Comm'n, Table 7 (Apr. 2020), available at www.ussc.gov). Mr. Anderson did not murder anyone and his criminal history evidences mostly minor drug possession offenses. The nationwide statistics reported by the Sentencing Commission further evidences the sentencing disparity present here as the sentence Anderson was given far exceeded the mean and medium sentences for drug trafficking offenses, both nationally and in the Fifth Circuit. As such, said lengthy sentence was egregiously disparate to not only Anderson's co-defendant's sentences but also to defendants who have been found guilty of similar conduct nationally.

Section 3582(c)(1)(A) was enacted by Congress to remedy the issues articulated above. "The very purpose of Section 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020). Numerous courts have determined that a district court may consider "sentencing disparity" when assessing if there are "extraordinary and compelling reasons" supporting a sentence reduction under Section 3582(c)(1)(A). United States v. Marks, No. 6:03-cr-06033 (W.D.N.Y. Mar. 14, 2019); see also McCoy, 981 F.3d at 285 (holding "the severity of a 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under Section 3582(c)(1)(A)."); and United States v. Williams, No. 06CR50055-(1), 2020 U.S. Dist. LEXIS 221125,

2020 WL 6940788, at *3 (N.D. Ill. Nov. 25) (gathering cases).

The Court should also consider the fact that Anderson's sentence is "unusually long." As Congress indicated, an "unusually long" sentence may form the basis for a sentence reduction. S. Rep. No. 225, 98th Cong., 1st Sess. 37-150, at 55-56. In Cantu-Rivera, 1:05-CR-458-1, 2019 WL 2498923 at *2 (S.D. Tex. June 17, 2019), the court took the defendant's sentence — an unusually long sentence — into account in granting his compassionate release motion. The court also noted the same in Brown 4:05-CR-00227-1, 2019 WL 4942051 at *3 (S.D. Iowa Oct. 8, 2019; and McCoy, 981 F.3d 271, 285-88 (" the sheer and unusual length of [petitioners'] sentences," and "gross disparity," may properly warrant a grant of compassionate release).

In United States v. McDonald, No. 94-cr-20256-1, 2020 U.S. Dist. LEXIS 106051, at *19 (W.D. Tenn. June 8, 2020), the district court stated that "[a] court assessing a compassionate release motion may consider

sentencing disparities among co-defendants when assessing whether there are extraordinary and compelling reasons to support release," Similarly, the district court in United States v. Cantu, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019) determined that 18 U.S.C. Section 3582(c) grants the Court the authority to reduce a defendant's sentence in order to correct a sentence disparity. In addition, the Court in United States v. Alexander, No. 1:04 CR 529, 2020 U.S. Dist. LEXIS 198264, at *10 (N.D. Ohio Oct. 26, 2020) granted the petitioner's compassionate release motion noting that the sentence disparity indicated that the defendant has served "an adequate punishment for his crimes."

These cases and the legislative history of the compassionate release statute indicate that the gross sentencing disparity evident in the instant case may be rectified by the Court in the context of a prisoner submitted motion under Section 3582(c)(1)(A). The Court should take this opportunity to correct the unusually long and draconian sentence imposed upon this petitioner.

B. Anderson's underlying medical conditions render him particularly vulnerable to COVID-19 at FCI Cumberland.

Petitioner is housed at FCI Cumberland, a federal prison that has experienced two major COVID-19 outbreaks since January 2021 and a prison in which nearly half of its inmate population has been infected with the deadly disease. See www.bop.gov/coronavirus (search by institution). Anderson is morbidly obese (BMI > 40) and suffers from numerous additional serious medical conditions which render him at risk of severe illness from COVID-19 including hypertension, sleep apnea, PTSD, anxiety, manic depression, bipolar depression, personality disorder, and multiple neck and back injuries.   These medical issues are part of Anderson's PSR and the reason that the Court made the recommendation to the BOP that Anderson "serve this sentence at a medical facility that can accomodate his medical needs," (Doc. #163). Unfortunately,

the BOP did not follow the Court's recommendation and Mr. Anderson's severe back injury has not been treated nor has his neck injuries been treated. As such, he lives in constant debilitating pain.

The CDC indicates that people suffering from hypertension or obesity are at an increased risk for severe illness upon contracting COVID-19. See www.cdc.gov/coronavirus/. Accordingly, courts across the nation have granted prisoners release under the compassionate release statute who have these ailments and are at risk of COVID-19 infection due to their imprisonment. See e.g. United States v. Franco, No. 12-932, 2020 U.S. Dist. LEXIS 111169, 2020 WL 4344834, *2 (S.D.N.Y. June 24, 2020)("The Government concedes that defendant's health conditions [hypertension and obesity] establish 'extraordinary and compelling reasons' for his release."); United States v. Foreman, No. 19-62, 2020 U.S. Dist. LEXIS 82330, 2020 WL 2315908, *4 (D. Conn. May 11, 2020)(finding that obesity and hypertension constitute

extraordinary and compelling reasons justifying release in the midst of the COVID-19 pandemic.); United States v. Rivera, 2020 U.S. Dist. LEXIS 157192, 2020 WL 5105090, *4 (E.D. Mich. Aug. 31, 2020) (finding that a defendant with obesity and hypertension, housed in a prison with known cases of COVID-19, presents an extraordinary and compelling situation warranting release); and United States v. Roper, 2021 U.S. Dist. LEXIS 13341, *2-3, 2021 WL 222007 (finding extraordinary and compelling grounds for release for defendant who had served over 12 years of a 322-month sentence based on defendant's documented obesity and prediabetes noting his "outstanding rehabilitative efforts," including only "two minor infractions").

Petitioner's circumstances are no less dire than the above defendants who were granted relief. Mr. Anderson's circumstances are even more extraordinary and compelling as he clearly presents multiple basis for relief — medical and non-medical basis — which combined show a much more apparent need for relief.

## C. Anderson's exceptional rehabilitative efforts warrant the relief requested.

Petitioners may not be granted relief under Section 3582(c)(1)(A) solely on the basis of rehabilitation — see 28 U.S.C. Section 994(t) — however post sentencing rehabilitation is a "critical factor" in judging the reasonableness of a sentence under Section 3553(a). See Pepper v. United States, 562 U.S. 476, 491 (2011)(explaining that post-sentencing rehabilitation goes to Sections 3553(a)(1), 3553(a)(2)(B) — (C)); see United States v. Trujillo, 713 F.3d 1003, 1010, 2013 U.S. App. LEXIS 7561, 2013 WL 607374 (9th Cir. 2013). Numerous district courts have granted motions for compassionate release based on the combination of a defendant's post-sentencing rehabilitation efforts and other factors. See e.g. United States v. Marks, No. 03-CR-6033L, 2020 U.S. Dist. LEXIS 68828, 2020 WL 1908911, *16 (W.D.N.Y. Apr. 20, 2020)("Mark's efforts toward rehabilitation lead me to conclude that he has established extraordinary and compelling reasons for a reduction of his sentence.");

United States v. Wade-Waiver, No. 99-CR-257, 2020 U.S. Dist. LEXIS 69474, 2020 WL 1864906, *5-6 (C.D. Cal. Apr. 13, 2020)(granting Section 3582(c)(1)(A) motion based on defendant's rehabilitation and changes to the "stacking" provisions of Section 924(c)); United States v. Chan, No. 96-CR-00094-JSW-13, 2020 U.S. Dist. LEXIS 56232, 2020 WL 1527895, *6 (N.D. Cal. March 31, 2020)("[W]hen the Court considers the record presented by Chan regarding his rehabilitation efforts in combination with the amendments to Section 924(c)'s stacking provisions, the Court concludes he has demonstrated extraordinary and compelling reasons to reduce his sentence on those two counts.").

Under Pepper, the Court must consider "the most up-to-date picture" of the defendant's history and characteristics, which "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." Pepper, 562 U.S. at 492. Mr. Anderson's conduct while in prison shows that he is now rehabilitated and dedicated to leading a law-abiding life. Anderson's BOP Program Review (Exhibit A)

evidences his extensive efforts to fully rehabilitate himself during his years of incarceration. During 2017, Anderson completed Drug Education and he is on the waiting list for the prison's Non-Residential Drug Treatment Program. He has completed multiple parenting classes and other courses aimed at his rehabilitation. He has also completed various correspondence courses. The above indicated "changed circumstances" represent the situation that Congress meant the compassionate release statute to provide relief for. See S. Rep. No. 98-225, at 55-56. The Court should take this unique opportunity to remedy what is an "unusually long" sentence due to "changed circumstances" in line with Congressional intent. Id. at 55-56.

## CONCLUSION

Mr. Anderson respectfully requests that the Court reduce his sentence to time served. In the alternative, he asks that the Court consider the changed circumstances presented in this motion and the sentencing disparity and reduce his

sentence accordingly.

Lastly, Mr. Anderson requests that the Court appoint him counsel under the Criminal Justice Act to supplement his pleading with supporting documentation to include his medical records from the BOP, his home plan records, and further briefing on the issues presented in this petition.

Respectfully submitted,

Dated: 6-4-2021

David Anderson
Prisoner no. 31149-380
FCI Cumberland
P.O. Box 1000
Cumberland, Md. 21501-1000
(301) 784-1000

Declaration of David Lee Anderson

David L. Anderson states:

1. Exhibit A is a copy of my Program Review received from my case manager on 12-17-2020.
2. Exhibit B is a copy of the request that I sent to the warden of my prison. I have not received any response from the warden.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of June 2021 at Cumberland, Maryland.

David Lee Anderson